ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SINDY AND MICHAEL HOLLOWAY,  )
                                       )
          **Plaintiffs,**        )
                                       )
**vs.**                                )
                                     )     **Case No. 06-4138-JAR**
**OFFICER MICHAEL VARGAS,**   )
                                       )
          **Defendant.**       )
_____)

## MEMORANDUM AND ORDER DENYING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court upon defendant's Motion for Summary Judgment (Doc. 32). Plaintiffs filed this action against Topeka Police Officer Michael Vargas in his individual capacity, alleging violations of their constitutional rights resulting from a police encounter and subsequent search of their residence. The motion is now fully briefed and the Court is prepared to rule. For the reasons set forth more fully below, the Court denies defendant's motion for summary judgment.

## I.    Factual Basis

At approximately 8:30 a.m. on Sunday, October 17, 2004, Officer Vargas was dispatched to 2898 S.W. College Court, Topeka, Kansas on a report that a thirty to thirty-five year old white female was walking a dog in a cul-de-sac while carrying a gun.[1] Officer Vargas drove around the cul-de-sac but saw no one in the area. About ten minutes later, Officer Vargas received another dispatch to the College Court address reporting that a second call had been received

---

[1]Plaintiffs attempt to controvert that Sindy Holloway was walking her dog by instead stating that she was on her own property.

about a woman at the same address outside carrying a gun.

Officer Vargas waited for backup officers to arrive and then walked toward the house at 2898 S.W. College Court.  As he approached, he saw a woman matching the dispatcher's description, standing near a car in the driveway.  The woman was later identified as Sindy Holloway.  Sindy Holloway recalls taking her gun out of her pocket and placing it on the car next to her when she saw the officer driving toward her.  Officer Vargas ordered her to get on the ground and she obeyed the command.  Sindy Holloway heard the officers talking loudly but could not understand what they were saying.  Then, Officer Vargas forced his knee into Sindy Holloway's back, handcuffed her, and picked her up.  Officer Vargas found the loaded handgun on top of the car next to where Sindy Holloway was standing.  Officer Vargas does not state that he saw the gun before this point in time.  During the encounter, Sindy Holloway told officers that she thought she was going to pass out several times.

Officers then entered the residence at 2898 S.W. College Court without a warrant and proceeded to the bedroom where plaintiff Michael Holloway was sleeping. After Officer Vargas observed guns near the bed where Michael Holloway was sleeping, Officer Vargas requested that he get out of the bed, get dressed, and then escorted him to the living room.  At this point, Sindy Holloway was seated in the living room and the handcuffs had been removed.

Officers conducted a search of the residence to determine if anyone had been injured. Michael Holloway told Officer Vargas that someone had broken into their home on the previous evening.  Officer Vargas took a report of this incident and the officers left.  No charges were ever filed against the Holloway's.

## II.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2]  A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[3]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[4]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[5]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[6]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[7]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[8]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9]  When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light

---

[2]Fed. R. Civ. P. 56(c).

[3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4]*Id.*

[5]*Id.* at 251–52.

[6]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[8]*Id.*

[9]*Id.*

most favorable to the nonmoving party and that it may not make credibility determinations nor weigh the evidence.[10]

## III.   Discussion

In an action under 42 U.S.C. § 1983, a suit against a government official may be made to impose individual liability for actions taken under color of state law.[11]  In order to establish individual liability in a § 1983 suit, a plaintiff only need show that the official, "acting under color of state law, caused the deprivation of a federal right."[12]  An official sued in his individual capacity may be entitled to qualified immunity,[13] which is immunity from suit, rather than a mere defense to liability.[14]  "Because qualified immunity is effectively lost if a case is permitted to go to trial, 'it should be resolved as early as possible.'"[15]

Upon a defendant's assertion of a qualified immunity defense, plaintiffs have a two-part burden.  First, plaintiffs must allege facts showing that the official's conduct violated a constitutional right.[16]  If a violation is shown, "'the next, sequential step is to ask whether the right was clearly established.'"[17]  The issue of immunity is a legal one and the Court may not

---

[10]*See Scott v. Harris*, 127 S. Ct. 1769, 1774–75 (2007); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[11]*Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[12]*Id.*

[13]*Id.*

[14]*Meacham v. Frazier*, 500 F.3d 1200, 1203 (10th Cir. 2007) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

[15]*Id.* (quoting *Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir. 2000)).

[16]*Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

[17]*Id.* (quoting *Saucier*, 533 U.S. at 201).

avoid it by framing it as a factual issue.[18]  The Supreme Court counsels that before addressing

the issue of qualified immunity, the Court must first consider: "Taken in the light most favorable

to the party asserting the injury, do the facts alleged show the officer's conduct violated a

constitutional right?"[19]

Plaintiffs allege Fourth Amendment violations against Officer Vargas in his individual

capacity for his conduct when taking Sidney Holloway into custody and in searching the

Holloway's residence.  The Court addresses each in turn.

### A.    *Constitutional Violation*

### 1.    **Investigatory Stop**

The appropriate threshold inquiry is whether, taking plaintiffs' allegations as true,

defendant violated Sindy Holloway's Fourth Amendment right to be free from unreasonable

seizures."[20]  The constitutionality of an investigative stop depends on "whether the officer's

action was justified at its inception, and whether it was reasonably related in scope to the

circumstances which justified the interference in the first place."[21]  Under *Terry v. Ohio*, a police

officer may conduct an investigative stop of an individual if the officer has a reasonable

suspicion supported by articulable facts that criminal activity "may be afoot."[22]  Reasonable

suspicion may be supported by an "objectively reasonable" good faith belief even if premised on

---

[18]*Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

[19]*Saucier*, 533 U.S. at 201; *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005).

[20]*Meacham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007).

[21]*Id.* at 19–20.

[22]392 U.S. 1 (1968).

factual error.[23]

Officer Vargas argues that the stop of Sindy Holloway was based on reasonable suspicion because it was based on a tip that she possessed a concealed weapon, which was a crime in Topeka at the time.[24]   The reasonable suspicion claimed by Officer Vargas did not arise from his own observations, but instead was based solely on a phone call made by an unknown caller from an unknown location.[25]   "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.'"[26]   Still, "there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop."[27]

In *Florida v. J.L.*, the United States Supreme Court considered whether officers had reasonable suspicion to stop and frisk an individual after being made aware of an anonymous call that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun."[28]   Apart from the anonymous tip, the officers had no reason to suspect three black males, one of whom was wearing a plaid shirt, that they observed at the bus stop.  The officers did not

---

[23]*United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004).

[24]*See* Topeka Code § 54-101(a)(1) (repealed Feb. 20, 2007) ("It shall be unlawful for any person who is not an officer of the law . . . [t]o be found within the city limits carrying upon his person a concealed deadly weapon.  A deadly weapon includes . . . pistols.").

[25]There is absolutely no evidence in the summary judgment record about the source of the phone calls relayed by dispatch to Officer Vargas.

[26]*Florida v. J.L.*, 529 U.S. 266, 270 (2000); *see also United States v. Copening*, 506 F.3d 1241, 1246 (10th Cir. 2007).

[27]*Copening*, 506 F.3d at 1246.

[28]*J.L.*, 529 U.S. at 268.

6

see a firearm, but told the defendant to put his hands up on the bus stop, frisked him and seized a gun from his pocket.  He was charged with carrying a concealed firearm without a license and possessing a firearm while under the age of eighteen.[29]

The Supreme Court found that the anonymous tip lacked the requisite indicia of reliability and thus, did not constitute reasonable suspicion to conduct the investigatory stop:

> The anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility. That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L.[30]

The Court went on to explain that the fact that the tipster was able to accurately describe the suspect's physical attributes was not sufficient to indicate reliability: "The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person."[31]

The Court finds *Florida v. J.L.* is controlling on the issue of whether Officer Vargas's investigative stop was justified at its inception.  While the City of Topeka had an ordinance in place that criminalized possession of a concealed weapon, the Court finds that, viewing the evidence in the light most favorable to plaintiffs, there is sufficient evidence to suggest that

---

[29]*Id.* at 268–69.

[30]*Id.* at 271.

[31]*Id.* at 272; *see also United States v. Tuter*, 240 F.3d 1292, 1297 (10th Cir. 2001).

Officer Vargas's stop was not based on evidence that would support a reasonable suspicion that criminal activity was afoot.  Even accepting Officer Vargas's statement of uncontroverted facts as true, the stop was based entirely on an anonymous tip and there is no evidence to indicate that the caller bore the standard indicia of reliability that would justify the stop at its inception. There is no evidence that the caller provided any details about the future behavior or actions of Sindy Holloway, for Officer Vargas to test the informant's knowledge or credibility.[32]  Nor is there any evidence that the area was a high-crime area, that Officer Vargas corroborated any information provided by the tipster, nor that Officer Vargas had similar past experiences that led him to believe Sindy Holloway was committing a crime by possessing a concealed weapon.[33] Accordingly, the Holloway's have alleged sufficient facts to establish a constitutional violation based on the initial stop of Sindy Holloway.

### 2.    Search of the Residence

Officer Vargas further argues that the search of the Holloway's residence without a warrant was lawful due to the presence of exigent circumstances.  Warrantless searches and seizures inside homes are presumptively unreasonable under the Fourth Amendment.[34]  One exception to the warrant requirement is to respond to exigent circumstances.[35]  To constitute exigent circumstances, (1) the officers must have an objectively reasonable basis to believe there

---

[32]*See Tuter*, 240 F.3d at 1297.

[33]*Compare United States v. Hodges*, 215 F. App'x 737, 741 (10th Cir. 2007) (finding reasonable suspicion of a weapons violation based on considerably detailed tip, corroboration of details provided, and that the conduct took place in a high-crime area at 4:30 a.m., which in the officer's experience meant criminal activity was likely afoot) *with Tuter*, 240 F.3d at 1297–98 (finding no probable cause to support warrant based on anonymous tip because it was based only on "minimal corroboration of innocent, readily observable facts.").

[34]*See, e.g.*, *Payton v. New York*, 445 U.S. 573, 586 (1980).

[35]*See Brigham City v. Stuart*, 547 U.S. 398, 126 S. Ct. 1943, 1947 (2006).

8

is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search must be reasonable.[36]  Under the first prong, the Court evaluates "whether the officers had reasonable grounds to believe an immediate need to enter existed 'guided by the realities of the situation presented by the record from the viewpoint of prudent, cautious, and trained officers.'"[37]

Officer Vargas argues that because he encountered Sindy Holloway in front of the residence with a loaded handgun, it was reasonable for him to investigate whether anyone in the house had been harmed given that she had been "generally unresponsive to [his] commands and inquiries."  He maintains that the search of the house was limited to looking for injured or hurt persons.  The Court finds that the evidence is insufficient to demonstrate exigent circumstances justifying entry into the residence.  Viewing the facts in the light most favorable to the Holloways, Sindy Holloway was unable to hear Officer Vargas when he told her to get on the ground.  There is no evidence that she attempted to flee, or that she made any threats with the weapon.[38]  In fact, because Officer Vargas had handcuffed Sindy Holloway, there is no way that she could have posed a threat to officers.  Nor was there evidence that anyone was even inside the home, much less an injured person.  There is insufficient evidence that Officer Vargas had a reasonable belief that there was an immediate need to enter the Holloway's residence; therefore, the Holloway's have alleged sufficient facts to support a constitutional violation based on the entry into their home.

---

[36]*Id.*; *United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006).

[37]*United States v. Layman*, 244 F. App'x 206, 210 (10th Cir. 2007) (quoting *Najar*, 451 F.3d at 718–19).

[38]*See United States v. Walker*, 474 F.3d 1249, 1253 (10th Cir. 2007) (finding threatening remark from occupant of home justified the officers taking action to protect themselves and enter to disarm the occupant).

9

**B.      *Clearly Established Right***

To overcome qualified immunity, plaintiffs also must show that the law was clearly established at the time of the violation.  To make this determination, the Court asks if "'the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'"[39]  To survive summary judgment, the right must be particularized, meaning that "there must ordinarily be a Supreme Court or Tenth Circuit decision on point, or clearly established weight of authority from other courts."[40]

As the Court has explained, as of October 17, 2004, the law was clearly established that an anonymous tip, without more, and without the standard indicia of reliability, is insufficient to establish reasonable suspicion to conduct an investigatory stop of an individual for possession of a firearm.[41]  Despite the fact that the City of Topeka made possession of a concealed weapon unlawful, Officer Vargas needed reasonable suspicion that this law was being violated in order to stop Sindy Holloway.  The clearly established law under Supreme Court and Tenth Circuit precedent foreclosed a stop based only on an anonymous tip that did not include any standard indicia of reliability.  Accordingly, summary judgment is denied because the Court finds that Officer Vargas does not enjoy qualified immunity.

The Court also finds that the law was clearly established that without exigent circumstances, or some other applicable exception to the warrant requirement, Officer Vargas could not conduct a search of the Holloway's home.  Here, Officer Vargas needed to have

---

[39]*See Meacham v. Frazier*, 500 F.3d 1200, 1203 (10th Cir. 2007) (quoting *Medina v. Cram*, 252 F.3d 1131, (10th Cir. 2001)).

[40]*Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995).

[41]*J.L.*, 529 U.S. at 268.

formed a reasonable belief that there was an immediate need to protect the lives of those inside the Holloway residence or others from serious or threatened injury.[42]  Instead, Officer Vargas relied only upon the presence of an armed person in front of the residence to justify the intrusion. The Court finds that Officer Vargas is not entitled to qualified immunity on the claim that he unlawfully searched the Holloway's residence.

     **IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for Summary Judgment (Doc. 32) is denied.

     **IT IS SO ORDERED**.

     Dated this  8th  day of February 2008.

                S/ Julie A. Robinson
               Julie A. Robinson
               United States District Judge

---

[42]*See Cortez v. McCauley*, 478 F.3d 1108, 1124 (10th Cir. 2007).